**PHILIPP OVERSEAS, INC., Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**C.D. 4859; Court No. 78-7-01253.**

United States Customs Court.

May 29, 1980.

Barnes, Richardson & Colburn, New York City (E. Thomas Honey and John J. Galvin, New York City, of counsel), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, and John J. Mahon, New York City, Trial Atty., for defendant.

NEWMAN, Judge:

## INTRODUCTION

This action involves the proper tariff classification for certain stainless steel angles imported from Norway and entered at the port of New York in October and November 1977.

The merchandise was assessed with duty at the rate of 8.5 per centum ad valorem under item 609.86 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68-9, plus additional duties on the chromium and molybdenum content under items 607.01 and 607.02 respectively, pursuant to headnote 4, subpart B, part 2, schedule 6. Plaintiff claims that the angles are properly dutiable at the rate of 0.1 cent per pound plus 2 per centum ad valorem under item 609.82, TSUS, as modified by T.D. 68–9, plus the additional duties on the chromium and molybdenum content, which are not contested.

## STATUTE INVOLVED

The pertinent statutory provisions in TSUS schedule 6, part 2, read:

Angles, shapes, and sections, all the foregoing, of iron or steel, hot rolled, forged, extruded, or drawn, or cold formed or cold finished, whether or not drilled, punched, or otherwise advanced; sheet piling of iron or steel:

    Angles, shapes, and sections:

        Hot rolled; or, cold formed and weighing over 0.29 pound per linear foot:

            Not drilled, not punched, and not otherwise advanced:

\*    \*    \*    \*    \*    \*    \*    \*

[Claimed]
609.82        Alloy iron or steel  . . 0.1 cent per lb. + 2% ad val. + additional duties (see headnote 4)

            Drilled, punched, or otherwise advanced:

\*    \*    \*    \*    \*    \*    \*    \*

[Classified]
609.86        Alloy iron or steel  . . 8.5% ad val. + additional duties (see headnote 4)

## THE FACTS [1]

The imported articles are stainless steel angles [2] of various sizes. These angles are produced by heating a steel billet, and then transferring it from the furnace to a hot rolling mill where it is rolled into the shape of an angle. After coming off the rolling mill, the rolled stainless shape is cooled and cut to length, after which it is annealed by reheating to a temperature of at least 1000 degrees centigrade and cooled by quenching in water. To be commercially acceptable, the angles must then be straightened, since they are wavy after the rolling process (R. 17, 51, 84). After straightening, the angles are then pickled by dipping them into an acid solution to remove the crust or scale that formed because of the annealing process and to make the metal resistant to corrosion (R. 14–17, 31, 33–34, 50–51, plaintiff's exhibit 3).

It further appears that prior to annealing, the stainless steel shape (referred to as "hot rolled as rolled" (R. 16, 30)) has scale or rust, with no predictable hardness, tensile strength, yield point, elongation, ductility, or response to corroding action (R. 16, 50). Additionally, prior to annealing, the chromium has not properly bonded to the iron to produce a noncorrosive surface, and the annealing process is required to redistribute the chromium and the carbon to produce a proper union of the chromium with the iron in the metal (R. 14, 49–50). In short, the purpose of the annealing process is to create a uniform and predictable range of physical characteristics in the metal as well as create a corrosion resistant product (R. 14, 35, 50–51, 77); [3] the purpose of the pickling process is to remove the annealing scale so as to give the stainless steel a uniform layer of chromium oxide on its "skin" and make it corrosion resistant (R. 52, 80, 82).

The record also establishes that the annealing and pickling processes are an integral and vital part of the manufacture of the imported stainless steel angles; and that prior to those processes, the products of the rolling mill are semifinished, lacking in predictable properties and not commercially acceptable as stainless steel angles (R. 16, 17, 21, 37, 52, 53–54, 78–79, 81).[4]

Finally, the record shows that while drilling and punching are mechanical opera-

---

1. The record consists of the oral testimony of two witnesses for plaintiff and one witness for defendant. Plaintiff's witnesses were: Edwin J. Helfand, vice president of Philipp Overseas, Inc., and James A. Kearney, a metallurgical engineer employed as a consultant to the Pittsburgh Testing Laboratory. Defendant's witness was Raymond Thomas, a metallurgist employed by U. S. Steel Corp. Additionally, plaintiff introduced in evidence a sample and three documentary exhibits; defendant submitted one documentary exhibit.

2. This fact is admitted by defendant in its answer to paragraph 4 of the complaint.

3. As put by defendant's witness Thomas, "the intent of the heat treatment [annealing] is to either alter the microstructure or the distribution of the micro–constituent material" (R. 95).

4. Although ASTM (American Society for Testing Materials) specifications do not specifically mention pickling, plaintiff's witness Kearney testified that "industry practice uniformly provides for a pickled finish as a product finished in the annealed condition" and that "pickling is the normal hot rolled, annealed product finish" (R. 52–53, 81).

tions, annealing is a thermal process, and pickling is a chemical process (R. 57). Other forms of "mechanical operations" performed on angles are bending and forming (R. 18), and mitering corners for knitting angles together with plates to make welded assemblies (R. 57).

## OPINION

### 1

■ In construing the Tariff Schedules "all parts of [the] statute must be read together and all relevant headnotes are to be considered in determining Congressional intent". *Lyons Export & Import, Inc. v. United States*, 59 CCPA 142, 146, C.A.D. 1056, 461 F.2d 830 (1972). Here, the centerpiece of the dispute is headnote 1, part 2 of schedule 6, which reads:

* * * Unless the context requires otherwise, the provisions of this part apply to the products described by whatever process made (i. e., whether rolled, forged, drawn, extruded, cast or sintered) and whether or not such products have been subjected to treatments to improve the properties or appearance of the metals or to protect them against rusting, corrosion or other deterioration. These treatments include *annealing*, tempering, case–hardening and similar heat–treatments or nitriding; descaling, *pickling*, scraping, scalping and other processes to remove oxidation scale and crust; * * [Emphasis added.]

■ It is evident from the foregoing headnote, that the products classifiable under item 609.82, TSUS, may be subjected to annealing and pickling "[u]nless the context [of item 609.82] requires otherwise".

Defendant maintains that the words in the superior heading to item 609.82, "not otherwise advanced" fall within the exclusionary language in headnote 1, part 2, schedule 6, "[u]nless the context requires otherwise"; that the imports were "otherwise advanced" by reason of having been subjected to annealing and pickling; that therefore the merchandise is excluded from item 609.82 and is properly dutiable under item 609.86.

Plaintiff, on the other hand, urges that notwithstanding annealing and pickling, the merchandise was "not otherwise advanced" within the purview of the superior heading to item 609.82, TSUS; and hence headnote 1, *supra*, is applicable to the merchandise classifiable under item 609.82.

There is no dispute that the imports were neither drilled nor punched, and defendant does not claim that the straightening operation constituted an "advancement" of the angles. Consequently, the issue is narrowed to determining whether the annealing and pickling operations (which are expressly allowed by headnote 1, *supra*, "unless the context requires otherwise") exclude the merchandise from classification under item 609.82 by reason of the language "not otherwise advanced" in the superior hearing.

### 2

Plaintiff argues that the annealing and pickling processes were essential, integral and continuous operations in the production of the stainless steel angles, and that without such processes commercially acceptable stainless steel angles could not have been produced. Accordingly, plaintiff insists that annealing and pickling did not constitute "advancements" within the purview of the statute.

■ It is well settled that no step in the creation of an article is at the same time an "advancement" of the article. *United States v. Baron Tube Co. et al.*, 47 CCPA 69, 71, C.A.D. 730 (1960); *Commercial Shearing & Stamping Company v. United States*, (*Guadalupe Industrial Supply Company, Inc., Party–in–Interest*), 65 Cust.Ct. 91, 105, C.D. 4060, 317 F.Supp. 750 (1970), *aff'd*, 59 CCPA 203, C.A.D. 1067, 464 F.2d 1048 (1972). Moreover, "manipulations after rolling, incident to making the rolled shape merchantable and fit for shipment, do not constitute 'advance' within the congressional intent". *American Mannex Corp. v. United States*, 56 Cust.Ct. 31, 36, C.D. 2608 (1966). *Accord, E. Dillingham, Inc., et al. v. United States*, 61 Cust.Ct. 33, C.D. 3522 (1968).

Since the imported angles were composed of stainless steel intended for corrosion resistant service, commercially acceptable angles of the type imported could not be produced without annealing and pickling. Plainly, then, the "hot rolled as rolled" angles, which lacked predictable physical qualities and corrosion resistance, were merely semifinished products.[5] Hence, applying the rationale of the above–cited cases, annealing and pickling were steps in the creation of commercially acceptable angles, and thus should not be considered as "advancements" within the purview of the statute.

Defendant argues that annealing and pickling should be considered as "advancements", since those treatments were unnecessary to produce angles of "Alloy iron or steel". However, defendant ignores the fact that the specific type of alloy steel of which the imports were composed (stainless types 304 and 316) required the annealing and pickling operations to be commercially acceptable. Moreover, the fact that the imports were in the *shape* of angles after leaving the hot rolling mill does not override the more important consideration that the imports would not have been commercially acceptable angles without the annealing and pickling operations. This aspect of the case is especially pointed up by the admission of defendant's witness Thomas that he had never encountered a single order for nonannealed and nonpickled stainless steel angles such as the imports (R. 116–117).

As underpinning for its contention that the imports were "otherwise advanced" by reason of the annealing and pickling processes, defendant cites: *Karl Schroff &*

*Associates, Inc. v. United States*, 67 Cust.Ct. 4, C.D. 4244 (1971); *Edward W. Daniel Company v. United States*, 67 Cust.Ct. 132, C.D. 4264 (1971); and *F. W. Myers & Co., Inc. v. United States*, 45 Cust.Ct. 124, C.D. 2210 (1960).

In *Schroff* and *Daniel*, the TSUS provision under construction covered "Forgings of iron or steel, not machined, not tooled, and not otherwise processed after forging", which provision appears in the superior heading to item 608.25. In both cases, the Court addressed the issue as to whether certain forgings were "otherwise processed after forging" by reason of a heat treatment known as "normalizing" to which the merchandise was subjected after forging. Since normalizing was not found to be incidental to creating the forgings, but rather was a subsequent process, the merchandise was held to have been "otherwise processed after forging", and therefore excluded from item 608.25, TSUS.

Inasmuch as the statutory language under construction in *Schroff* and *Daniel* is different from that under consideration in the present case, defendant's reliance upon those cases is misplaced.

The statutory language under construction in *Schroff* and *Daniel* was "otherwise processed after forging". Since the term "forging" connotes a specific manufacturing process and also describes a class of articles, the Court was required to determine whether normalizing was incidental to the forging process, or as found by the Court, subsequent thereto. If the language here under construction were "not otherwise processed after rolling",[6] then the le-

---

**5.** As pointed up in defendant's exhibit A, a steel products manual published by the American Iron and Steel Institute, p. 29:

> *Heat Treatment. Stainless and heat resisting steels are seldom placed in service in the hot rolled or forged condition.* Annealing or other forms of heat treatment are desirable to obtain the full advantage of the corrosion resisting and mechanical properties of these steels. However, for *certain applications*, particularly those involving *high temperature service*, it may be desirable to use some types

in the as–rolled or forged condition. [Emphasis added.]

**6.** Where Congress intended that classification be based upon whether the merchandise had been processed or advanced after a certain manufacturing operation, Congress explicitly so provided. Thus, in *Schroff* and *Daniel*, the issue was whether the articles were "processed after forging". Additionally, it may be noted that Congress provided for the classification of malleable cast–iron fittings under items 610.70 through 610.74, TSUS, based upon whether such fittings have been "advanced in condition

278

gal issue in *Schroff* and *Daniel* would be analogous to that now presented, and the Court would be required to determine whether the annealing and pickling operations were incidental to the rolling process or subsequent thereto. However, the issue here is not whether annealing and pickling were incidental to the rolling process,[7] but rather whether the angles were "otherwise advanced". For the reasons previously expressed, I have concluded that the imports were not "otherwise advanced" by reason of the annealing and pickling operations. The short of the matter is *Schroff* and *Daniel* are not pertinent to the issue in the present case because of the different statutory language involved.

The *Myers* case cited by defendant is similarly inapposite. There, the issue was the proper tariff classification for certain steel castings which were annealed after casting. The Court agreed with the government's contention that the annealing process, which occurred subsequent to casting, advanced the merchandise beyond the status of "mere castings" (45 Cust.Ct. at 129), citing *inter alia Mountain Copper Co. v. United States,* 40 Treas.Dec. 103, T.D. 38823 (1921). In *Mountain Copper*, the Board of General Appraisers (predecessor of the Customs Court) in determining the classification of certain castings that had been annealed by a separate process, observed *inter alia* that "annealing ordinarily forms no part of the usual casting process, and articles so subsequently treated have thereby been further advanced in manufacture beyond the point where they may be considered mere castings".

*Myers* is distinguishable from the present case for the same reason that *Schroff* and *Daniel* are inapposite. The term "castings" (like "forgings") connotes a specific manufacturing process and also describes a cer-

tain class of articles. Consequently, in *Myers* the Court was required to determine whether annealing was part of the usual casting process or a subsequent treatment. As previously observed, the issue here is not whether annealing and pickling were incidental to the rolling operation or a subsequent treatment. Although concededly annealing and pickling were not incidental to the rolling operation, nevertheless those processes were essential to and an integral part of the creation of the imported stainless steel angles (R. 53, 79, 80). In sum, the issue in *Myers* is not analogous to that presented here.

3

█ Although the facts in this case clearly show that the imports were "not otherwise advanced" by reason of the annealing and pickling operations, I agree with plaintiff's contention that the same conclusion may be reached by applying the doctrine of *ejusdem generis*. Briefly stated, under the doctrine of *ejusdem generis* "where particular words of description are followed by general terms, the latter refer only to things of a like class with those particularly described". *United States v. C. J. Tower & Sons,* 44 CCPA 1, 5, C.A.D. 626 (1956). Here, the words "otherwise advanced" in the statute are preceded by the words "drilled" and "punched".

█ The record shows that drilling and punching (holemaking operations) are mechanical processes by which finished angles are fabricated for assembly with other components. Hence, applying *ejusdem generis* to the statutory provision involved herein requires that the words "otherwise advanced" be interpreted as encompassing only mechanical operations performed after the essential characteristics of the angles are attained. However, annealing and

by operations or processes subsequent to the casting process". It may be added that where Congress intended to exclude certain merchandise from classification under a specific item number in part 2 of schedule 6 because it has been subjected to one of the treatments enumerated in headnote 1, explicit language to that effect is expressed within the specific tariff provision. For example, items 608.70 through

608.78, TSUS, distinguish between tempered and nontempered wire rods; items 608.84 through 608.88 distinguish between pickled and nonpickled plates and sheets of iron or steel.

7. There is no dispute that the annealing and pickling operations were not incidental to the rolling process.

pickling are respectively thermal and chemical operations, which in the instant case were employed in the creation of commercially acceptable stainless steel angles. Therefore, it is apparent that annealing and pickling are not *ejusdem generis* with drilling and punching.

As strikingly analogous to the present case, plaintiff has called attention to *Border Brokerage Company, Inc. v. United States*, 60 Cust.Ct. 487, C.D. 3437 (1968) wherein the Court construed the superior heading to item 141.80, TSUS, which provides for "Vegetables * * * packed in sale, in brine, pickled, *or otherwise prepared or preserved * * ** " (emphasis added). One of the issues was whether the subject vegetables were "otherwise prepared or preserved" within the ambit of the statute by reason of freezing or blanching. Concerning that issue, the Court applied *ejusdem generis*, citing *C. J. Tower, supra,* and held that freezing and blanching are not *ejusdem generis* with the enumerated processes of packing in salt, or in brine, or pickling.

## CONCLUSION

The record and relevant legal principles discussed herein lead inexorably to the conclusion that the imported angles were "not otherwise advanced" by the annealing and pickling processes. Consequently, the presumption of correctness attaching to the Government's classification of the merchandise under item 609.86, TSUS, has been overcome, and the proper classification for the merchandise is under item 609.82, TSUS, as claimed by plaintiff.

Judgment will be entered accordingly.