**The UNITED STATES, Appellant,**

v.

**PHILIPP OVERSEAS, INC., Appellee.**

**No. 80–36.**

United States Court of Customs and Patent Appeals.

June 11, 1981.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, Atty. in Charge, John J. Mahon, New York City, for appellant.

E. Thomas Honey, John J. Galvin, New York City, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court (now the United States Court of International Trade) in *Philipp Overseas, Inc. v. United States,* 84 Cust.Ct. 200, C.D. 4859, 496 F.Supp. 273 (1980), sustaining appellee's complaint and holding that hot rolled stainless steel angles, which were annealed and pickled during the manufacturing process, are properly classified under Item 609.82 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9, as hot rolled alloy steel angles, not drilled, not punched, and not otherwise advanced. The government had classified the imported angles under Item 609.86, TSUS, as modified by T.D. 68–9, contending that although the angles were not drilled or punched, they were "otherwise advanced" because they were annealed and pickled in the course of their production. We affirm.

### Background

The imported goods are stainless steel angles. They are formed by "hot rolling" a steel billet, cooling it, annealing it (reheat to 1000°C and cool by quenching in water), straightening (to remove waves created by the rolling process), and "pickling" (dipping the angles into acid solution). The purpose of annealing is to create a uniform and predictable range of physical characteristics in the metal, including corrosion resistance, by uniformly redistributing its chromium content (which had previously been localized after hot rolling in the form of chromium carbide). The pickling step removes the crust or scale which is formed in annealing, insuring that the chromium now located over the entire surface of the metal can combine with oxygen, giving the metal a uniform layer of chromium oxide, which in turn makes it corrosion resistant.

The angles were assessed a duty at 8.5% ad valorem pursuant to classification under 609.86, TSUS, plus additional duties on their chromium and molybdenum content under Items 607.01 and 607.02, respectively, pursuant to Schedule 6, Part 2, Subpart B, headnote 4. Appellee claimed the proper duty to be 0.1 cent/lb. plus 2% ad valorem under 609.82, TSUS. The additional duties on the chromium and molybdenum content were not contested.

### Statutory Provisions

*Tariff Schedules of the United States*
SCHEDULE 6.—METALS AND METAL PRODUCTS

\*　　\*　　\*　　\*　　\*　　\*

PART 2.—METALS, THEIR ALLOYS, AND THEIR BASIC SHAPES AND FORMS

*Part 2 headnotes:*

1. This part covers precious metals and base metals (including such metals when they are chemically pure), their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. *Unless the context requires otherwise,* the provisions of this part apply to the products described by whatever process made (i. e., whether rolled, forged, drawn, extruded, cast or sintered) and whether or not such products have been subjected to treatments to improve the properties or appearance of the metals or to protect them against rusting, corrosion or other deterioration. These treatments include *annealing,* tempering, case-hardening and similar heat-treatment or nitriding; descaling, *pickling,* scraping, scalping and other processes to remove oxidation scale and crust; \* \* \*. [Emphasis ours.]

\*　　\*　　\*　　\*　　\*　　\*

### Subpart B.—Iron or Steel

\*　　\*　　\*　　\*　　\*　　\*

*Subpart B headnotes:*

\*　　\*　　\*　　\*　　\*　　\*

3. *Forms and Conditions of Iron or Steel*

\*　　\*　　\*　　\*　　\*　　\*

(j) *Angles, shapes, and sections:* Products which do not conform completely to the respective specifications set forth herein for blooms, billets, slabs, sheet bars, bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and do not include any tubular products.

\*　　\*　　\*　　\*　　\*　　\*

```
Angles, shapes, and sections, all the
    foregoing, of iron or steel, hot rolled,
    forged, extruded, or drawn, or cold
    formed or cold finished, whether or not
    drilled, punched, or otherwise advanced;
    sheet piling of iron or steel;

Angles, shapes, and sections;

    Hot rolled; or, cold formed and
        weighing over 0.29 pound per
        linear foot:
```

```
                          Not drilled, not punched, and
                            not otherwise advanced:
                      *        *        *        *
   [Claimed]
    609.82                    Alloy iron or steel ... 0.1 cents
                                                      per lb.+
                                                      2% ad val.
                                                      + additional
                                                      duties (see
                                                      headnote 4)

                          Drilled, punched or otherwise
                            advanced:
                      *        *        *        *
   [Classified]
     609.86                   Alloy iron or steel ... 8.5% ad
                                                      val. + addi-
                                                      tional duties
                                                      (see head-
                                                      note 4)
```

### Issue

The issue is whether the annealing and pickling processes, which are expressly allowed by headnote 1, "unless the context requires otherwise," exclude the imported angles from classification under Item 609.82 by reason of the language "not otherwise advanced" in the superior heading.

### Opinion Below

The Customs Court stated it to be

* * * well settled that no step in the creation of an article is at the same time an "advancement" of the article. *United States v. Baron Tube Co. et al.*, 47 CCPA 69, 71, C.A.D. 730 (1960); *Commercial Shearing & Stamping Company v. United States, (Guadalupe Industrial Supply Company, Inc., Party-in-Interest)*, 65 Cust.Ct. 91, 105, C.D. 4060, 317 F.Supp. 750 (1970), *aff'd*, 59 CCPA 203, C.A.D. 1067, 464 F.2d 1048 (1972). Moreover, "manipulations after rolling, incident to making the rolled shape merchantable and fit for shipment, do not constitute 'advance' within the congressional intent". *American Mannex Corp. v. United States*, 56 Cust.Ct. 31, 36, C.D. 2608 (1966).

Since the angles were intended to be corrosion resistant, and *commercially acceptable* angles could not be produced without annealing and pickling, the court agreed with appellee that the imported angles were not "otherwise advanced" within the meaning of the heading superior to Item 609.86. It further noted that the government's own witness indicated that "he had never encountered a single order for nonannealed and nonpickled stainless steel angles."

The court also applied the doctrine of *ejusdem generis*, "where particular words of description are followed by general terms, the latter refer only to things of a like class with those particularly described," to reach the same result. "Otherwise advanced" in the statute is preceded by the words "drilled" and "punched." Stating that annealing and pickling are not *ejusdem generis* with drilling and punching, the court held that the presumption of correctness of classification had been overcome and that the proper classification was under Item 609.82 as alleged by appellee.

### Arguments On Appeal

The government argues that Items 609.86 and 609.82 provide for angles of alloy iron or steel. They do not require the angles to be stainless steel, the interpretation it alleges was given by the court below. In support of this argument, the government notes that other headnotes demonstrate that "stainless steel" is only one of many grades of steel that fall under the broader

term, "alloy iron or steel." * Thus, even if all stainless steels required annealing or pickling or both to be commercially acceptable, that would have no bearing on whether those processes are necessary for these imports to be "angles * * * of alloy iron or steel" under either Item 609.86 or 609.82.

The government further argues that, in any event, several witnesses have testified that many angles of "alloy iron or steel" are sold hot rolled as rolled without either annealing or pickling. Thus, it is stated, it is clear that annealing or pickling or both are not necessary to produce or sell angles of alloy iron or steel, and that "advanced" must be construed in terms of further processing beyond the minimum required to create the article, i. e., hot rolling, and not in terms of whether the process renders the article commercially acceptable. Appellant states that the court itself noted that annealing and pickling are "not incidental to the rolling" operation and that, despite this, it erroneously referred to non-annealed and non-pickled angles as "semi-finished."

Finally, the government argues that application of the doctrine of *ejusdem generis* is unwarranted, its use being reserved for those cases where the legislative intent is in doubt or ambiguous. In proposing that the meaning of the language in the heading superior to 609.86 is clear, the government repeats much of its earlier argument.

Appellee agrees with the reasoning of the lower court. Among other things, it states that the government's argument that the angles should be considered "otherwise advanced" since annealing and pickling are unnecessary to produce certain types of steel angles ignores the fact that the specific types of alloy steel of which the angles were composed, stainless steel types 304 and 316, require annealing and pickling to create a commercially acceptable product. The processes in issue, it is argued, cannot be both steps in creation and advancement.

## OPINION

■ The lower court stated, as previously noted, that no step in the creation of an article can at the same time be an advancement of that *article*. The question to be resolved, therefore, is whether that "article" is an [angle] * * * of alloy iron or steel hot rolled as rolled, as the government argues, or a stainless steel angle which conforms to the pickling and annealing requirements of stainless steel types 304 and 316, as appellee asserts.

Other than for the proposition of law for which it was cited by the lower court, the case of *United States v. Baron Tube Co.,* supra, is not particularly instructive. Baron Tube had imported steel tubes manufactured by (1) hot rolling steel strips to cylindrical shapes with their longitudinal edges abutting in an open seam, (2) closing that open seam with a weld, and (3) removing the rib resulting from the weld. The imports were classified under a section which laid a duty upon "lap-welded, butt-welded, seamed, or jointed iron or steel tubes, pipes, flues, and stays * * *." Baron Tube claimed, and the Customs Court agreed, that the proper duty was found in a section relating to certain structural shapes (not specifically referencing tubes) and "all other structural shapes of iron or steel" which are not advanced beyond "hammering, rolling, or casting." In reversing the decision of the Customs Court, this court stated that "the tubes here are not structural shapes until processing beyond 'rolling, hammering, or casting' has been completed." Thus, although the court noted that "No step required for the creation of a structural shape * * * can, at the same time, be an advancement of a structural shape," it held that the tubes when rolled did not possess the physical properties required to qualify them as structural shapes. This, however, does not help us determine what comprises an angle of "alloy iron or steel."

The lower court also stated, regarding "commercial acceptability," that, " 'manipulations after rolling, incident to making the rolled shape merchantable and fit for shipment, do not constitute "advance" within

* Schedule 6, Part 2, Subpart B, headnotes 2(h)(ii) and 2(h)(iv).

the congressional intent'," citing *American Mannex Corp. v. United States*, supra, and *E. Dillingham, Inc. v. United States*, 61 Cust.Ct. 33, C.D. 3522 (1968). Those cases dealt with the removal of useless or dangerous excrescences from rolled steel oil well casings, *American Mannex*, and from axe head forgings, *E. Dillingham*. The reasoning behind those decisions was that the cutting or grinding of the excrescences were steps required in the creation of the articles involved—to make them merchantable and fit for shipment—and were thus a part of the rolling and forging process. *Commercial Shearing & Stamping Co. v. United States*, supra at 105, 317 F.Supp. at 760.

The next question we must address in deciding what "article" we are dealing with, therefore, is whether the steps of annealing and pickling are required to make the imported "angles * * * of alloy iron or steel" merchantable, it being clear that the steps are not required to make the angles "fit for shipment." This case, however, does not present the type of situation found in *American Mannex* and *E. Dillingham*,—whether the excision of useless or dangerous excrescences constitutes "advancement"—for the headnote discussion of "basic shapes and forms" of metals and their alloys is neither incomplete nor ambiguous with regard to annealing and pickling, and, therefore, needs no modification through discussion of what is a "commercially acceptable" angle. Accordingly, we agree with the government that an angle of "alloy iron or steel" should be interpreted to mean just that, an angle of *any* alloy iron or steel, since headnote 1, supra, refers to alloy iron or steel products "whether *or not*" they have been otherwise improved by annealing, pickling and the like.

We do, however, on the basis of *ejusdem generis*, conclude that it would be stretching the matter to hold that even though headnote 1 expressly allows annealing and pickling, "Drilled, punched, or otherwise advanced" in the heading superior to Item 609.86 modifies that allowance pursuant to the phrase in headnote 1, "Unless the context requires otherwise." Drilling and punching are not *ejusdem generis* with annealing and pickling, and we therefore hold that the context of the heading superior to Item 609.86 is not one which "requires otherwise." The decision of the lower court is *affirmed*.