**TRANS–BORDER CUSTOMS SERVICES, INC., as agent for National Sample Card Co., Ltd., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 94–10.**
**Court No. 92–02–00085.**

United States Court of
International Trade.

Jan. 20, 1994.

Soller, Shayne & Horn, Gerald B. Horn (Paulsen K. Vandevert, Margaret Hardy Sachter, of counsel), for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Edith Sanchez Shea, U.S. Customs Service (Sheryl French, of counsel), for defendant.

## MEMORANDUM OPINION

GOLDBERG, Judge:

This action comes before the court on plaintiff's Motion for Summary Judgment and defendant's Cross–Motion for Summary Judgment pursuant to Rule 56 of the rules of this court. Plaintiff, Trans–Border Customs Services, Inc. ("Trans–Border"), challenges the United States Customs Service's ("Customs'") classification of imported sample books of fabric from Canada. The court exercises jurisdiction under 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

Trans–Border is the importer of record and the customs broker acting as agent for National Sample Card Co., Ltd. ("National Sample"), the Canadian manufacturer of the sample books at issue. American manufacturers supply fabric swatches of U.S. origin to National Sample, which incorporates them into its sample books. All other materials used to produce the sample books are of Canadian origin. National Sample manufactures the sample books in Canada. The parties agree that the sample books are products of Canada, pursuant to General Note 3(c)(vii) of the Harmonized Tariff Schedule of the United States ("HTSUS") and Annex 401 of the United States–Canada Free Trade Agreement Implementation Act of 1988, ("FTA").

Customs issued a ruling letter classifying sample books made by National Sample as "other made-up articles of textile" under subheading 6307.90.50, HTSUS. Headquarters Ruling Letter ("HRL") 085564, December 14, 1989. Upon National Sample's request, Customs reconsidered its prior classification decision, ultimately changing its position by ruling that "the sample books do qualify as 'samples' within the context of subheading 9813.00.20." HRL 086354, April 17, 1990. Customs further stated that "the sample books may enter the United States as 'samples solely for . . . use in taking orders for merchandise' [under] subheading 9813.00.20, HTSUSA." *Id.* The ruling letter also noted that "[a]pplicable entry requirements set forth in [19 C.F.R.] section 10.31 *et seq* [.], . . . must be met." *Id.*

Subsequently, however, Customs refused entry of the sample books under 9813.00.20, HTSUS, because plaintiff failed to comply with the applicable temporary importation requirements set forth in Note 1(a) to subchapter XIII of Chapter 98, HTSUS.[1] The entry summary for the sample books did not include a statement of intended use, nor a declaration that the articles were not imported for sale or sale-on-approval. The sample books were not exported within one year after importation, and have not yet been exported from the United States. Customs reclassified the sample books at issue under heading 6307.90.9050 HTSUS, as other made-up articles of textiles, liquidated the entry, and assessed duty on the merchandise at the reduced FTA rate of 5.6% *ad valorem.* Trans–Border paid all liquidated duties as required by law. Trans–Border then filed a timely protest to the reclassification, which Customs denied on December 3, 1991.

Trans–Border brings this action contesting the denial of its protest. Trans–Border asserts in its motion for summary judgment that the subject merchandise is properly classified under subheading 9813.00.20, HTSUS, Column 1, Special, and is thus unconditionally free of duty as a product of Canada. Defendant has filed a cross-motion for summary judgment, arguing that Customs' denial of classification under subheading 9813.00.20, HTSUS, was correct because Trans–Border failed to satisfy the requirements of Note 1(a) to subchapter XIII, Chapter 98, HTSUS.

---

1. Subchapter XIII covers Articles Admitted Temporarily Free of Duty Under Bond. Note 1(a) provides:
   "The articles described in the provisions of this subchapter, *when not imported for sale or for sale on approval,* may be admitted into the United States without the payment of duty, *under bond* for their *exportation within 1 year from the date of importation. . . ."*
   HTSUS, Chapter 98, subchapter XIII, Note 1(a) (1990) (emphasis added).

Note 1(a) further states that the period of time for exportation of the merchandise, "in the discretion of the Secretary of the Treasury, may be extended, upon application, for one or more further periods which, when added to the initial 1 year shall not exceed a total of 3 years, . . ." subject to exceptions not applicable to this case. *Id.*

*TARIFF PROVISIONS*

Chapter 98, subchapter XIII, HTSUS (1990), provides in pertinent part:

| Heading/ Subheading | Article Description | Rates of Duty | | |
|---|---|---|---|---|
| | | 1 | | 2 |
| | | General | Special | |
| 9813.00.20 | Samples solely for use in taking orders for merchandise | Free, under bond, as prescribed in U.S. note 1 to this subchapter | Free (CA) | Free, under bond, as prescribed in U.S. note 1 to this subchapter |

## DISCUSSION

Summary judgment is appropriate upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). As the parties note, no genuine issues of material fact remain in dispute in this case. There is no dispute over the descriptive portion of heading 9813.-00.20, HTSUS, as the parties agree the imported sample books at issue are "samples" for purposes of this heading. The sole issue to be decided is whether, as a matter of law, samples from Canada are subject to the requirements of Note 1(a) to subchapter XIII, Chapter 98, HTSUS.

Note 1(a) provides that all merchandise listed under subchapter XIII is eligible for temporary duty-free treatment upon compliance with three requirements. First, the merchandise must not be imported for sale or sale-on-approval. Second, the merchandise must be imported under bond. Third, the merchandise must be exported within one year from the date of importation, subject to extensions of up to three years granted at the Secretary of the Treasury's discretion, upon application. Customs regulations further require that the importer declare upon entry the intended use of the merchandise, and state its intent not to sell the merchandise in the United States. 19 C.F.R. § 10.31 (1990).

Both parties recognize that, pursuant to Presidential Proclamation No. 5923, 53 Fed. Reg. 50,638 (December 14, 1988), which was issued to implement the FTA, a bond is no longer required for importations of merchandise of Canadian origin under heading 9813.-00.20, HTSUS. The parties disagree, however, as to whether the remaining terms of Note 1(a) are still applicable in order for samples from Canada to receive duty-free treatment. The court's analysis begins with an examination of how Note 1(a) fits within the statutory framework of the relevant tariff provisions. The court will then examine how the FTA affected Note 1(a) requirements as applied to merchandise from Canada.

### A. Statutory Framework

Customs' decision to deny entry of the merchandise in issue under 9813.00.20 is presumptively correct, and the importer has the burden of proving otherwise. 28 U.S.C. § 2639(a)(1) (1988); *see Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). The meaning of a tariff term is a question of law. *Digital Equip. Corp. v. United States,* 8 Fed.Cir. (T) 5, 6, 889 F.2d 267, 268 (1989). As with any statute, construction of a tariff provision must begin with a consideration of the statutory language itself. *See Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The court begins its analysis with the fundamental rule that where a statute is clear and unambiguous, "that is the end of the matter[,] for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

Trans–Border argues that the language "Free (CA)" in Column 1, Special, is plain, clear, and unambiguous, indicating that samples from Canada are entitled to unconditional duty-free treatment. Memorandum of

Law in Support of Plaintiff's Motion for Summary Judgment ("Pl.Br.") at 11. Trans–Border contends that absent ambiguity in the statutory language of Column 1, Special, neither the court nor Customs is at liberty to conjure up conditions allowing for interpretive construction of the statute. Trans–Border argues that because Column 1, Special, in 9813.00.20, HTSUS, makes no reference to Note 1(a), samples from Canada cannot be subject to any of the Note's conditions. Trans–Border further argues that neither the title of subchapter XIII ("Articles Admitted Temporarily Free of Duty Under Bond"), nor the references to Note 1 in the neighboring duty columns, *i.e.*, Column 1, General, and Column 2, can be the basis for application of Note 1(a) requirements to Column 1, Special. Pl. Br. at 13–14.

■ In determining the plain meaning of the statute, "the court must look to the particular statutory language at issue, as well as the language and design of the statute *as a whole*." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988) (emphasis added); *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1850). The section or chapter Notes form an integral part of the Harmonized Tariff System and have the same legal force as the text of the headings. *See Spradling International, Inc. v. United States*, 17 CIT ——, ——, 811 F.Supp. 687, 690–691 (1993) (upon finding the statutory language of Headnote 2(C) for Item 355.81, TSUS, unclear, the court proceeded to examine the legislative history of that Headnote and its 1984 amendment); *see also E.R. Hawthorne & Co. v. United States*, 730 F.2d 1490, 2 Fed.Cir. (T) 53 (1984); HTSUS General Rules of Interpretation, R. 1 (1990) ("[c]lassification shall be determined according to the terms of the headings and any relative *section or chapter notes*; . . . ." (emphasis added)). The function of the Notes is to define the precise scope of each heading, subheading, chapter, subchapter, and section. *See, e.g., H. Reisman Corp. v. United States*, No. 92–08–00569, slip op. 93–227 at 5, 1993 WL 499804 (CIT Dec. 1, 1993)

("Chapter note 1 defines with great specificity the types of merchandise that are included within Chapter 29."); *Ugg International, Inc. v. United States*, 17 CIT ——, ——, 813 F.Supp. 848, 853 (1993).

■ Trans–Border errs in limiting its plain meaning analysis of the statutes to only the words "Free (CA)" in Column 1, Special. Note 1(a) is not extrinsic to the terms of the subheadings within Chapter 98, subchapter XIII; rather, Note 1(a) is an intrinsic part of the statutory scheme of this subchapter of the Harmonized Tariff System as enacted by Congress, and is applicable to all of the subheadings in this subchapter. Column 1, General, and Column 2 highlight the bond requirement, stating "Free, under bond, as prescribed in U.S. note 1 to this sub-chapter." Note 1(a), however, is not applicable to these columns merely because it is referenced in the text of each of the headings. Rather, the conditions of Note 1(a) would be applicable even if it was not specifically mentioned in Column 1, General, because Congress legislated the subchapter Notes as an integral part of the statutory scheme.[2]

The court's determination of congressional intent in the tariff schedules requires reading all parts of the statute together, including the relevant headnotes, which are the primary source for ascertaining such intent. *Clipper Belt Lacer Co., Inc. v. United States*, 14 CIT 146, 158, 738 F.Supp. 528, 540 (1990) (citing *Lyons Export & Import, Inc. v. United States*, 59 CCPA 142, 146, 461 F.2d 830, 833 (1972); *Phillipp Overseas, Inc. v. United States*, 84 Cust.Ct. 200, 203, 496 F.Supp. 273, 276 (1980), *aff'd*, 68 CCPA 43, 651 F.2d 747 (1981); *C.J. Tower & Sons of Buffalo, Inc. v. United States*, 68 Cust.Ct. 377, 379–380, 343 F.Supp. 1387, 1390 (1972); *United States v. Patel*, 762 F.2d 784 (9th Cir.1985)), *aff'd*, 9 Fed.Cir. (T) 55, 923 F.2d 835 (1991).

The term "free" isolated in Column 1, Special, when taken out of context, is meaningless because all importations of items listed in subchapter XIII of Chapter 98, regardless

---

**2.** The Explanatory Notes, in contrast to the chapter and section Notes, are not controlling nor legally binding. The Explanatory Notes provide useful commentary on the scope of each heading of the Harmonized System, but should not be treated as dispositive. Joint Committee Report on the Omnibus Trade and Competitiveness Act of 1988, H.R.Conf.Rep. No. 100–576, 100th Cong., 2d Sess. at 549 (1988), 1988 U.S.Code Cong. & Admin.News, at 1547, 1582.

of the country of origin, may receive duty-free treatment provided the importer satisfies the requirements set out in Note 1(a). Compliance with the terms of the Headnotes, as well as the pertinent regulations associated with the claimed duty-free entry under the HTSUS, is mandatory. *See PPG Industries, Inc. v. United States,* 7 CIT 118, 128, 1984 WL 3749 (1984).

Congress' rationale for subchapter XIII of the HTSUS[3] is that an article temporarily imported, and subsequently exported, does not actually enter the U.S. market and thus "should be exempt from duty because it is not in reality an importation for consumption." S.Rep. No. 1081, 88th Cong., 2d Sess. (June 16, 1964), 1964 U.S.Code Cong. & Admin.News 2285 (justifying amendment to section 308(1) of the Tariff Act of 1930 to add aircraft engines, propellers, and parts and accessories, to the temporary-importations-under-bond list). Articles under the subheadings in subchapter XIII are entered into the United States on a temporary basis for specific limited purposes, such as modeling (9813.00.10, HTSUS), testing (9813.00.30, HTSUS), or exhibition (9813.00.60, HTSUS). These articles are not expected to be sold or consumed themselves but are to be used to facilitate other aspects of business or other purposes. Trans-Border's claimed construction would necessarily apply to all of the provisions in subchapter XIII, and would eviscerate the thrust of the Temporary Importations provisions contained in this chapter.

Furthermore, other tariff headings do provide unconditional duty-free treatment for certain samples. *See, e.g.,* Chapter 98, subchapter XI, subheadings 9811.00.20, 9811.00.40, and 9811.00.60, HTSUS (1990). For example, subheading 9811.00.60 provides unconditional duty-free entry for samples, subject to the strict restrictions that the samples be: (1) valued not over $1.00 each; (2) marked, torn, perforated or otherwise treated so that they are unsuitable for use other than as samples; and (3) used only to solicit orders in the United States for products of foreign countries. Congress enacted 9813.-00.20 without such restrictions on the value or condition of the samples, but did impose the temporal, use, and bond requirements of Note 1(a) as necessary conditions for duty-free treatment.

■ Thus, all importations of items in subchapter XIII, Chapter 98, HTSUS, are eligible for duty-free entry provided the requirements of Note 1(a) are satisfied. Importations from Canada, however, were affected by the U.S.–Canada FTA. The next issue to resolve is whether the FTA removed all other Note 1(a) requirements for merchandise from Canada, in addition to the Note's bond requirement.

## B. Presidential Proclamation No. 5923 and the FTA

■ On January 2, 1988, the President entered into the United States–Canada Free Trade Agreement. In approving the FTA, Congress authorized the President to proclaim such modifications of existing duties or excise treatment as he determines are necessary or appropriate to carry out the provisions of Article 401 of the FTA. United States–Canada Free–Trade Agreement Implementation Act of 1988, Pub.L. No. 100–449, § 201(a), 102 Stat. 1851, 1855–56 (Sep. 28, 1988). Article 401 of the FTA provides for continuing duty-free treatment for certain goods, including articles admitted temporarily free of duty under bond. In Annex III to Presidential Proclamation No. 5923, the bond requirement was eliminated for all subheadings under chapter 98, subchapter XIII, HTSUS.

Prior to enactment of the U.S.–Canada FTA, Column 1, Special in Chapter 98, subchapter XIII, was blank. Contrary to plaintiff's assertions, no references to Note 1(a) were deleted, discarded, or abolished from Column 1, Special, by the U.S.–Canada FTA.

**3.** The temporary bond provisions of Chapter 98, subchapter XIII, HTSUS are substantively the same as those originally set forth in the 1930 Tariff Act; those differences that do exist are not pertinent to this case. *Compare* Chapter 98, subchapter XIII, HTSUS (1990) *with* Schedule 8, Part 5, subpart C, TSUS (1963) *with* Tariff Act of 1930, Pub.L. No. 361, § 308, 46 Stat. 590, 690 (1930). *See also* United States Tariff Commission, The Tariff Classification Study of 1960: Explanatory and Background Materials (Schedule 8, Part 5) 79 (1960).

Pl.Br. at 12. Rather, after Presidential Proclamation No. 5923, the tariff schedules were amended by adding "Free (CA)" to the previously blank Column 1, Special. Thus, Trans–Border's contention that Customs seeks to read deleted language back into the statute is completely unfounded.

Customs concedes that the FTA modified the temporary importation requirements by eliminating the bond requirement for goods covered by subchapter XIII from Canada. Neither Congress' subsequent modifications of Column 1, Special, nor Presidential Proclamation No. 5923, however, refer to any modification of the time requirements for temporary importations from Canada. Trans–Border argues that the failure of both the Presidential Proclamation, and of Congress itself, to reference Note 1(a) or any other temporary importation restriction on samples from Canada "'provides strong affirmative evidence that' Congress intended that samples from Canada were to be admitted unconditionally duty free, and not as temporary importations." Pl. Reply Br. at 17 (citation omitted). However, neither the Presidential Proclamation nor Congress needed to provide for such time requirements for temporary importation, because Congress had already provided such requirements when it first enacted Note 1(a) and the associated headings eligible for temporary duty-free importations.

The inference that Congress has consented to the revocation of one of its own acts, merely because of its failure to act, rests upon a weak foundation. *Springer v. Government of the Philippine Islands,* 277 U.S. 189, 209, 48 S.Ct. 480, 485, 72 L.Ed. 845 (1928). The absence or omission of a reference to time restrictions on samples from Canada in the modified Column 1, Special, does not constitute an outright rejection of the statutory scheme intended by Congress when it enacted the temporary importation provision of Chapter 98, subchapter XIII, HTSUS, subject to the Note 1(a) conditions. *See also Markham v. Cabell,* 326 U.S. 404, 411, 66 S.Ct. 193, 196–97, 90 L.Ed. 165 (1945). Congress could have provided for unconditional duty-free treatment for samples from Canada by including it under those provisions for samples that are entitled to unconditional duty-free entry. Congress also could have further modified the heading in Column 1, Special, to clearly establish its intent to provide unconditional duty-free entry for articles from Canada. Similarly, pursuant to Section 201(a) of the FTA Implementation Act, the President could have indicated in his Presidential Proclamation that Canadian merchandise covered by the headings of subchapter XIII, Chapter 98, should be imported unconditionally duty-free. Likewise, the President could have expressly waived all Note 1(a) requirements for Canadian goods covered by this subchapter. The inescapable fact is that neither the President nor Congress chose to do so. The court will not construe a removal of the temporary importation requirements established by Congress where Congress and the President had opportunity to do so, but simply did not evince such an intent.

The court's ruling is consistent with the purpose of the U.S.–Canada FTA. The usual amount of the requisite bond is twice the amount of duty estimated to accrue, had the articles been entered under an ordinary consumption entry; the bond for samples intended solely for use in taking orders, *i.e.* entered under subheading 9813.00.20, HTSUS, is an amount equal to 110 percent of the estimated duties. 19 C.F.R. § 10.31(f) (1990). Exempting Canadian merchandise from the bond requirement reduces costs and facilitates importation, thus placing Canadian merchandise in a better position than merchandise from other countries. Customs thus affords samples from Canada a preference over samples from third countries which continue to be subject to the bond requirement. It does not necessarily follow that because the FTA waived one condition, *i.e.* the bond requirement, for duty-free treatment under this chapter, that all other requirements, including the need to export the merchandise and to declare the merchandise's intended use, were also necessarily waived.

Thus, absent an express statement demonstrating an intent to eliminate the Note 1(a) requirements for all goods from Canada under subchapter XIII, Chapter 98, HTSUS,

the other requirements provided by Congress in Note 1(a) remain generally applicable to the articles listed under subchapter XIII, including those articles considered temporary importations from Canada.

## CONCLUSION

Duty-free entry is available for all importations of items covered by subchapter XIII, Chapter 98, HTSUS, subject to compliance with the requirements of Note 1(a). The United States–Canada Free Trade Agreement removed the bond requirement for articles imported from Canada under this subchapter. However, neither Congress, in amending the tariff schedules, nor the President's Proclamation, issued pursuant to the U.S.–Canada FTA Implementation Act, provided unconditional duty-free entry for merchandise from Canada; this includes samples from Canada. Absent an express statement departing from the existing statutory framework, this court will not eradicate the temporary import requirements as applied to samples from Canada that are entered under subheading 9813.00.20, HTSUS. The government's cross-motion for summary judgment is therefore granted; judgment will be entered accordingly.

## *ORDER*

Upon consideration of plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment; and upon consideration of all other papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that defendant's motion for summary judgment is granted; it is further

**ORDERED** that plaintiff's motion for summary judgment is denied; it is further

**ORDERED** that judgment is entered for the United States; and it is further

**ORDERED** that this action is dismissed.