**TRANS–BORDER CUSTOMS SERVICE, INC., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 94–1230.**

United States Court of Appeals, Federal Circuit.

Feb. 2, 1996.

Gerald B. Horn and Margaret Hardy Sachter, Soller, Shayne & Horn, New York City, argued for the plaintiff-appellant. Of counsel was Clarence J. Erickson.

Mikki Graves–Walser, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, D.C., argued for defendant-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Joseph I. Liebman, Attorney in charge, International Trade Field Office. Of counsel was Sheryl A. French, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service.

Before PLAGER, LOURIE, and SCHALL, Circuit Judges.

PLAGER, Circuit Judge.

The Customs Service classified certain fabric sample books imported from Canada into the United States by Trans–Border Customs Service, Inc. ("Trans–Border") as "other made-up articles of textile" under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 6307.90.9050 (1993), thus requiring Trans–Border to pay a duty,

rather than as "samples solely for use in taking orders for merchandise" under HTSUS subheading 9813.00.20, entitled to duty-free admission. Trans–Border claimed it was entitled to the duty-free classification as a consequence of certain changes made to the tariff schedules resulting from the implementation of the U.S.–Canada Free–Trade Agreement. The Court of International Trade upheld Customs' decision. *Trans–Border Customs Services, Inc. v. United States,* 843 F.Supp. 1482, 16 I.T.R.D. 1039 (Ct. Int'l Trade 1994). We conclude that the Customs Service's classification is correct; we affirm the decision of the Court of International Trade.

## BACKGROUND

Trans–Border imports fabric sample books from National Sample Card Co., Ltd. ("National"), a Canadian manufacturer. The books, which are considered Canadian goods for Customs purposes, comprise American fabric swatches bound in Canada with Canadian materials. The books are imported into America for use in taking orders for American textiles from American customers. The books themselves are not sold or consumed in the United States.

Trans–Border sought classification of the sample books as "samples solely for use in taking orders for merchandise" under subheading 9813.00.20 of Chapter 98, subchapter XIII of the Harmonized Tariff Schedule of the United States ("HTSUS"). This would permit the books to be imported duty-free. Customs originally classified the sample books as "other made-up articles of textile" under HTSUS subheading 6307.90.9050. Upon National's request, Customs reclassified them under HTSUS subheading 9813.00.20, noting that National would have to meet "applicable entry requirements set forth in [19 C.F.R. § 10.31 *et seq.*]." *Trans–Border Customs Services, Inc.,* 843 F.Supp. at 1484, 16 I.T.R.D. at 1040 (Ct. Int'l Trade 1994).

Accordingly, Customs told Trans–Border that it was entitled "to temporary importation under bond" of the books, and that it would advise Trans–Border by separate letter "of the re-exportation requirement as it

applies to Canadian goods." Customs subsequently concluded that, notwithstanding the changes in the tariff schedules resulting from the FTA, the applicable requirements continued to mandate exportation of the books from the United States within one year of entry. Trans–Border disputed this conclusion, and the books were not exported within the time required. Customs levied duty.

Trans–Border appealed to the Court of International Trade, arguing that the exportation requirement did not apply to Canadian goods entered under 9813.00.20. Trans–Border argued that Presidential Proclamation 5923, which amended the HTSUS to implement the terms of the FTA, had eliminated the bond requirement; and that because the exportation requirement was solely a condition of the bond, Proclamation 5923 necessarily eliminated the exportation requirement as well. The Court of International Trade rejected the argument, and held for Customs. This appeal followed.

Subchapter XIII of the HTSUS covers "Articles Admitted Temporarily Free of Duty Under Bond," and permits certain items, which are not themselves sold in the U.S. but are instead used to facilitate other business transactions, to be admitted without duty, because they "are not in reality an importation for consumption." S.Rep. No. 1081, 88th Cong., 2d Sess. (June 16, 1964). Subchapter XIII contains a number of notes which apply to the interpretation and application of the various subheadings and provisions. Note 1 provides in relevant part that "[t]he articles described in the provisions of this subchapter, when not imported for sale or for sale on approval, may be admitted into the United States without the payment of duty, under bond for their exportation within 1 year from the date of importation...."

Subheading 9813.00.20 appears in the HTSUS as follows:

Rates of Duty

| Heading/ Subheading | Article Description | Column 1– General | Column 1– Special | Column 2 |
|---|---|---|---|---|
| 9800.00.20 | Samples solely for use in taking orders for merchandise | Free, under bond, as prescribed in U.S. note 1 to this subchapter | Free(CA) | Free, under bond, as prescribed in U.S. note 1 to this subchapter |

As shown, the HTSUS contains three "Rate of Duty" columns. Column 1–General indicates the tariff treatment for goods imported under subheading 9813.00.20 from countries with Most–Favored Nation (MFN) status. Column 1–Special indicates the tariff treatment for goods imported from MFN countries with additional trade agreements with the United States. Column 2 concerns tariff treatment of goods imported from countries without MFN status. Because the sample books in this case are Canadian imports, they are governed by the U.S.–Canada Free Trade Agreement (FTA). United States–Canada Free–Trade Agreement, 27 I.L.M. 281 (1988); United States–Canada Free–Trade Agreement Implementation Act of 1988, Pub.L. No. 100–449, 102 Stat. 1851 (Sept. 29, 1988). This is reflected in Column 1–Special, which states that Canadian im-

ports are admitted free through the designation "Free (CA)."

On January 2, 1988, the President signed the United States–Canada Free Trade Agreement. In implementing the FTA, Congress authorized the President to modify or change the HTSUS as he determines is necessary or appropriate to carry out the provisions of Article 401 of the FTA. United States–Canada Free Trade Agreement Implementation Act of 1988, Pub.L. No. 100–49, § 201(a), 102 Stat. 1851, 1855–56 (Sept. 28, 1988) ("Implementation Act of 1988"). Pursuant to this authorization, the President issued Proclamation 5923.

Prior to Proclamation 5923, Column 1–Special was blank, and Column 1–General and Column 2 both said that goods came in under Chapter 98 subchapter XIII "Free,

under bond, as prescribed in Note 1." Proclamation 5923 stated in relevant part that "[i]n order to provide duty-free entry to particular goods originating in the territory of Canada," Column 1–Special would be amended to read "Free (CA)" for imports under Chapter 98 subchapter XIII. The words in Column 1–General and Column 2, "under bond, as prescribed in Note 1," were not included in Column 1–Special. Trans–Border argued to the trial court that "under bond, as prescribed in Note 1" means that a bond *for exportation* was no longer required, which means that exportation was no longer required.

The Court of International Trade granted summary judgment for Customs, holding that subsection (a) of Note 1 establishes three separate requirements for duty-free entry of goods under subchapter XIII—not importing for sale, giving a bond, and exporting goods after one year—and that Proclamation 5923 eliminated only the bond requirement. *Trans–Border*, 843 F.Supp. at 1488, 16 I.T.R.D. at 1043. The Court of International Trade found that subchapter notes such as Note 1(a) apply to define the scope of subheadings regardless of whether the relevant rate of duty column references the Note and its conditions. *Id.* at 1486, 16 ITRD at 1043.

The Court of International Trade reasoned that admitting the books without requiring exportation would eliminate the rationale upon which temporary duty-free treatment is based: namely, that the goods are considered not to enter the U.S. market and therefore are not dutiable importations. *Id.* at 1487, 16 ITRD at 1042–43. Also, although the President easily could have specifically eliminated the exportation requirement, or all Note 1(a) requirements, for Canadian goods, he did not do so in the text of either the Proclamation or Column 1–Special. *Id.* at 1488, 16 ITRD at 1044. Likewise, Congress did not include Canadian samples with other articles afforded unconditional duty-free entry, which it could have done. *Id.* The Court of International Trade concluded that because removing the bond requirement served the FTA's purpose of placing Canadian goods on a better footing than third-

country goods, and no worse a footing than U.S. goods, continuing to impose the exportation requirement did not offend the FTA. Accordingly, the Court of International Trade upheld Customs' assessment of duty based on Trans–Border's failure to comply with the exportation requirement.

*DISCUSSION*

■ The Court of International Trade's grant of summary judgment for the Government is based on its interpretation of the Harmonized Tariff Schedule of the United States, USITC Pub. 2333, Sec. XXII, Ch. 98, Subch. XIII (1991). This is a question of law which this court reviews anew. *Aviall of Texas, Inc. v. United States*, 70 F.3d 1248, 1249–50 (Fed.Cir.1995).

The dispute in this case centers on the proper interpretation of the term "Free (CA)" in Column 1–Special, specifically, whether Canadian samples imported under subheading 9813.00.20, described as "Articles solely for use in taking orders for merchandise," must be reexported within one year under U.S. Note 1, even though no bond is required to secure that reexportation. Both parties assert that Note 1 applies, but advance different interpretations of Note 1. Admittedly, the term "Free (CA)" is rather cryptic, but the meaning becomes clear when the rest of the statute is considered.

According to General Rule of Interpretation 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes...." HTSUS General Rules of Interpretation, R. 1 (1990). General Rule of Interpretation 1 leaves no doubt that Note 1 of Subchapter XIII applies to subheading 9813.00.20 of the HTSUS.

■ Article 401 of the FTA, 27 I.L.M. 281, 307 (1988), provides for the elimination of certain customs duties on Canadian goods. Article 410 defines "duty" to include bonds. It seems clear that the purpose of Proclamation 5923 was to bring the tariff schedules into compliance with the FTA, and to eliminate the requirement for a bond in those cases where it no longer made sense, that is, when there no longer was a duty imposed.

358

In the case of goods admitted under the special provisions of subheading 9813.00.20, a provision specially applicable to goods "solely for use in taking orders for merchandise," there is no reason to think the President intended to eliminate the separate requirement that, in order for duty-free treatment to be accorded, the goods must be exported back to the sending country within the time specified. Whether the President pursuant to the delegation of authority granted to him could have made such a change is not before us. That he did not seems clear when viewed in the light of the overall structure of the HTSUS. The Presidential Proclamation does not purport to eliminate the exportation requirement, nor does it purport to eliminate the requirement that the goods not be brought into the country for sale or sale on approval. Absent a clear expression of intent to make that further change in the rules, we are loath to read it into them.

Trans–Border advances various arguments to the contrary. We have reviewed these arguments carefully and, in the final analysis, they all turn on the interpretation of the term "Free (CA)." Since we find that, when read in the light of the history of its creation, the meaning of the phrase is best understood as we have described, we agree with the Court of International Trade's disposition of these arguments, and the grant of summary judgment is

**AFFIRMED.**