**TITANIUM METALS CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Slip Op. 95–153.

Court No. 94–04–00236.

United States Court of International Trade.

Aug. 30, 1995.

deKieffer Dibble & Horgan, J. Kevin Horgan, Washington, DC, for plaintiff.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Cynthia B. Schultz, Robert J. Heilferty, Attorney Advisor, Office of the Chief Counsel for International Trade, United States Department of Commerce, of counsel, for defendant.

### OPINION

RESTANI, Judge:

This matter is before the court following a remand order. *Titanium Metals Corp. v. United States,* No. 94–04–00236 (Ct. Int'l Trade Dec. 5, 1994) (remand order). The

court ordered the International Trade Administration of the United States Department of Commerce ("Commerce") to determine whether it should direct the United States Customs Service ("Customs") to collect estimated antidumping duties on future imports of titanium sponge from Kazakhstan entered under temporary importation bond ("TIB"). On remand, Commerce determined that it was inappropriate to direct Customs to collect estimated antidumping duties on such imports. *Remand Determination: Titanium Metals Corp. v. United States,* Court No. 94–04–00236, at 1 (Dep't Comm. Apr. 17, 1995) (*"Remand Det."*). Plaintiff Titanium Metals Corp. ("TIMET") objects to Commerce's remand determination.

## BACKGROUND

Following a request from TIMET, a domestic titanium sponge producer, Commerce conducted an administrative review of titanium sponge imports from Kazakhstan. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 58 Fed.Reg. 51,053, 51,054 (Dep't Comm.1993). Titanium sponge is used primarily in the manufacture of aerospace vehicles, specifically, in the construction of compressor blades and wheels, stator blades, rotors, and other parts in aircraft gas turbine engines. In its preliminary determination, Commerce found no imports of titanium sponge from Kazakhstan, entered under TIB provisions or otherwise, during the period of review ("POR"), from August 1, 1992 to July 31, 1993. *Titanium Sponge from Kazakhstan,* 59 Fed.Reg. 6618, 6619 (Dep't Comm.1994) (prelim. results).

After receiving comments from TIMET and RMI Titanium Co., an importer of titanium sponge, Commerce published the final results of its administrative review. *Titanium Sponge from Kazakhstan,* 59 Fed.Reg. 16,617 (Dep't Comm.1994) (final results). In its final results, Commerce did not change its preliminary determination that no shipments of titanium sponge were imported into the United States from Kazakhstan during the POR. *Id.* at 16,618. Consequently, Commerce directed that the current antidumping duty deposit rate of 83.96% be maintained. *Id.* Commerce declined to address TIMET's claim regarding the collection of estimated antidumping duties for TIB entries as there were no imports found during the POR.

On July 1, 1994, TIMET filed a motion for judgment upon the agency record pursuant to USCIT Rule 56.2. In response, Commerce requested that its finding of no titanium sponge imports from Kazakhstan during the POR be sustained, but that the issue of whether estimated antidumping duties should be collected on future imports of titanium sponge from Kazakhstan entered under TIB be remanded. On December 5, 1994, the court recognized that TIMET and Commerce agreed that no imports of titanium sponge were made during the POR. The court remanded the issue of whether estimated antidumping duties should be collected on future imports of titanium sponge entered under TIB. *Titanium Metals Corp.,* Court No. 94–04–00236, at 1 (remand order).

On remand, Commerce determined that it was not appropriate to direct Customs to collect estimated antidumping duties on such imports. *Remand Det.* at 10. TIMET now challenges this determination on the basis that titanium sponge imported under TIB is "entered for consumption" and, as such, is subject to antidumping duties. Furthermore, TIMET contends that Commerce's determination is contrary to legislative intent as it permits importers to circumvent antidumping duty orders.

## STANDARD OF REVIEW

In reviewing remand determinations, the court will hold unlawful those determinations by Commerce found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988) (current version at 19 U.S.C.A. § 1516a(b)(1)(B)(I) (West Supp. 1995)).

## DISCUSSION

The provisions governing imports entered under TIB are found in the U.S. Notes to Subchapter XIII of the Harmonized Tariff Schedule of the United States, USITC Pub. 2690, ch. 98, subch. XIII, U.S. Notes at 98–37

(Supp. 1 1994) [hereinafter "HTSUS"].[1] Item 9813.00.05.20, HTSUS, the provision at issue,[2] allows duty-free importation under bond of merchandise to be processed into articles manufactured or produced in the United States, provided the merchandise is not imported for sale or sale on approval and that it is exported or destroyed in a timely manner. *See* HTSUS, U.S. Note 1(a), 2, at 98–37. The bond required for such entries is "an amount equal to double the duties which it is estimated would accrue (or such larger amount as ... is necessary to protect the revenue) had all the articles covered by the entry been entered under an ordinary consumption entry." 19 C.F.R. § 10.31(f); *see* 19 U.S.C. § 1623(a) (1988) (authorizing Treasury to require such bonds as it "may deem necessary for the protection of the revenue or to assure compliance with any provision of law [or] regulation"). Customs' practice is to include estimated antidumping (or "AD") and countervailing ("CV") duties in the amount of the temporary importation bond. *See, e.g.,* C.S.D. 93–21, 27 Cust.Bull. & Decs. 448, 450 (1992) ("[T]he TIB bond may be set in an amount to take into account countervailing or antidumping duties in order to protect the revenue.").[3]

Upon acceptance of the TIB entry and bond, the merchandise may be released to the importer but "shall not be liquidated as the transaction does not involve liquidated duties." 19 C.F.R. § 10.31(h). Failure to export or destroy merchandise entered under TIB results in a demand for payment of liquidated damages equal to the bond amount, that is, double the estimated duties applicable to the entry. 19 C.F.R. § 10.39(d)(1).

TIMET contends that although TIB provisions allow entry of merchandise under certain circumstances "without the payment of duty," the term "duty" must be interpreted under General Note 1 of the HTSUS,[4] which provides that the HTSUS provisions address only those duties provided for in the HTSUS. As AD/CV duties are not part of the HTSUS, the TIB provisions do not prevent the imposition of those duties. Commerce does not dispute this contention, but rather asserts that TIB entries are not "entries for consumption" within the meaning of the AD/CV duty laws. Consequently, according to Commerce, collection of AD/CV duties as to these entries is not required by statute.

The statutory language is clear that the assessment of AD/CV duties is restricted to merchandise "entered, or withdrawn from warehouse, for consumption." *See, e.g.,* 19 U.S.C. § 1673b(d)(1) (1988) (current version at 19 U.S.C.A. § 1673b(d)(2) (West Supp. 1995)).[5] The general term "entry" has been defined only as the filing of "documentation ... necessary to ... determine whether the merchandise may be released from customs custody." 19 U.S.C. § 1484(a)(1)(A) (1988).[6] Customs has defined "entry" as "documentation ... filed ... to secure the release of imported merchandise from Customs custody, or the act of filing that documentation." 19 C.F.R. § 141.0a(a) (1995). "Entered for consumption" is defined by Customs as meaning that "an entry summary for consumption has been filed ..., with estimated duties attached." *Id.* § 141.0a(f).

The legislative history of the AD/CV duty laws does not define "entered, or withdrawn

---

1. Customs' regulations pertaining to TIB entries are found in 19 C.F.R. §§ 10.31–10.40 (1995).

2. The parties do not dispute that future titanium sponge imports will enter under Item 9813.00.05.20, HTSUS.

3. Customs' regulations are not express on this point, but may be reasonably interpreted to require security for potential AD and CV duties. *See* 19 C.F.R. § 10.31(f).

4. General Note 1 states that "[a]ll goods provided for in this schedule ... are subject to duty ... as prescribed in general notes 3 through 13,

inclusive." HTSUS, Gen.Note 1, at 3 (Supp. 2 1994).

5. This language is repeated throughout the statute. *See, e.g.,* 19 U.S.C. §§ 1673b(e)(2), 1673d(c)(4)(B)–(C), 1673e(a)(1)(A), 1673e(b)(2), 1673e(c)(1)(C), 1673f(a)–(b), 1673g(a) (1988).

6. In addition, the importer of record must notify Customs if an import activity summary statement will be filed. 19 U.S.C. § 1484(a)(1)(A)(ii). Completion of an entry involves filing the declared value, classification and rate of duty applicable to the merchandise. *Id.* § 1484(a)(1)(B).

from warehouse, for consumption."[7] TI-MET argues that courts have interpreted this phrase flexibly to effectuate the purpose of the law under consideration. In *Excel Shipping Corp. v. United States,* 44 Cust.Ct. 55, C.D. 2153 (1960), the court determined whether goods that were withdrawn from a warehouse were considered "entered for consumption" under a certain tariff provision. The court noted that the term "entry" in acts of Congress has been interpreted in either of two ways: 1) "the bill entry,—the paper or declaration which the merchant or importer [submits] to the entry clerk," and 2) "not a document, but a transaction,—a series of acts which are necessary to … the entering of the goods." *Id.* at 59 (quoting *United States v. Legg,* 105 F. 930, 933 (2d Cir.1901)). The court stated that "Congress intended to connote by the phrase 'entered for consumption' a series of acts which are necessary to and which culminate in the entering of goods into the commerce of the country." *Id.* at 61.

TIMET claims that goods entered under TIB are "entered for consumption" within the meaning of the AD/CV duty laws. TI-MET reasons that as liability for duties accrues upon the arrival of TIB imports in the United States, such imports are released into domestic commerce and "entered for consumption" at that time. Furthermore, TI-MET argues that goods entered under TIB are consumption entries as Customs does not maintain adequate control over the goods once they are released to the importer. TI-MET emphasizes that Customs may not recall the merchandise once it is liquidated, and upon default of the TIB, retains only a claim for liquidated damages.[8]

In response, Commerce relies upon *Trans–Border Customs Servs., Inc. v. United States,* 843 F.Supp. 1482 (Ct. Int'l Trade 1994), to support the proposition that TIB entries are temporary in nature and not "entered for consumption." In *Trans–Border,* the court considered whether merchandise samples entered under Item 9813.00.20, HTSUS,[9] were in fact eligible for the duty-free treatment provided by TIB provisions. *Id.* at 1484. The court stated that, "Congress' rationale for subchapter XIII of the HTSUS is that an article temporarily imported, and subsequently exported, does not actually enter the U.S. market and thus 'should be exempt from duty because *it is not in reality an importation for consumption.*'" *Id.* at 1487 (quoting S.Rep. No. 1081, 88th Cong., 2d Sess. (1964), 1964 U.S.C.C.A.N. 2285) (emphasis added). The court noted that articles imported under the TIB provisions are entered into the United States on a temporary basis and are "not expected to be sold or consumed themselves but are to be used to facilitate other aspects of business or other purposes." *Id.*

TIMET argues that *Trans–Border* is inapposite because the case dealt with merchandise entered under Item 9813.00.20, HTSUS, involving the use of merchandise samples. Although the court mentioned other articles under the same subchapter, it did not specifically note the item at issue here, Item 9813.00.05.20, HTSUS.[10] TIMET contends that goods imported under this item are clearly consumed in the United States as they are manufactured or processed into new and different products.

■ Despite that distinction, Commerce contends that the court's view in *Trans–Border,* that the temporary nature of TIB entries is inconsistent with the concept of an entry for consumption, is on point. The court agrees. Although the court notes that *Trans–Border* did not involve the application of AD/CV duty laws to goods entered under TIB, the court finds the reasoning with re-

---

**7.** The phrase first appeared in 19 U.S.C. § 160(b) (Supp. II 1952) without particular emphasis. No definition of "entered, or withdrawn from warehouse, for consumption" was given.

**8.** Commerce contends that TIMET's assertions that Customs does not retain *physical* control over goods entered under TIB misses the point. Commerce emphasizes that Customs retains *legal* control over the goods. *See, e.g.,* 19 C.F.R. § 10.39(d)(1) (liquidated damages for failure to fulfill terms of temporary import bond); *id.*

§ 113.13(c)–(d) (1995) (Customs' discretion to address sufficiency of bond); *id.* § 113.62(k) (consequences of default of bond).

**9.** Item 9813.00.20, HTSUS, applies to "[s]amples solely for use in taking orders for merchandise."

**10.** Item 9813.00.05.20, HTSUS, applies to "[a]rticles to be processed into articles manufactured or produced in the United States."

gard to the temporary nature of TIB entries supportive of Commerce's interpretation of "entered for consumption." Notwithstanding that articles entered under Item 9813.00.05.20, HTSUS, are manufactured or processed in the United States, the court cannot say that such manufacturing or processing is sufficient to reject Commerce's determination that the goods are not "entered for consumption." [11]

TIMET further argues that if estimated antidumping duties are not collected on TIB entries, importers using TIB provisions will be able to evade AD/CD duty laws. TIMET claims a recent amendment to Customs regulations [12] that allows for anticipatory breach of temporary importation bonds, actually endorses the practice of importers who use TIBs to enter goods temporarily and then decide not to export or destroy those goods. Under the new amendment, an importer may choose not to export goods entered under TIB and pay liquidated damages equal to the amount of the bond at that time, rather than at the expiration of the statutory time period (generally, one year). *See id.* at 14,632; 19 C.F.R. § 10.39(g) (effective Apr. 19, 1995).

TIMET claims that the adverse consequences of such practice would be multiple. TIMET lists such consequences as: 1) TIB entries will not be subject to administrative review by Commerce; 2) the importer will not have to pay interest on the underpayment of antidumping duties; 3) the importer's antidumping duty liability will be fixed without regard to the actual margin of dumping; and 4) all this will occur without notice

to either Commerce or the affected domestic industry.

In its remand determination, Commerce recognized the possibility that importers may evade some antidumping duties by entering goods under TIB and subsequently failing to export or destroy the goods. Commerce, however, argued that it is inappropriate to address this issue in the present context for several reasons: 1) there is no current shipment under review in the present case, nor is it alleged that titanium sponge from Kazakhstan is evading antidumping duties in this manner; 2) precluding the use of TIBs for merchandise subject to an AD/CV duty order would have implications for numerous products and AD/CV duty orders, and an opportunity for comment should be given to potentially affected parties; and 3) to preclude such use of TIB provisions, Customs regulations would require amendment. [13]

■ Potential for circumvention is relevant, but only to the extent it relates to statutory interpretation. While TIMET claims it is clear that Congress' intent is to close any perceived "loopholes" in the antidumping laws and Congress would have defined "entered for consumption" to encompass TIB entries had it considered this issue, the court does not discern such a clear intent. Despite past legislative action by Congress to prevent circumvention of AD/CV duty laws in other circumstances, [14] the term "entered for consumption" under the AD/CV duty laws is, at least, ambiguous and the court will not infer legislative intent in derogation of the reasonable interpretation of Commerce.

11. TIMET stresses that for the purposes of quota laws, Customs has determined that TIB entries are considered entered for consumption and counted against the applicable quota. Customs reasons that this is done to prevent circumvention of quota laws by importers who enter goods under TIB (which would otherwise be barred by quota restrictions) and subsequently fail to export or destroy such goods. In the context of the AD/CV duty laws, these concerns are not present. AD/CV duties are included in the bond amount required for TIBs. Although TIMET argues the potential for circumvention of the AD/CV duty laws exists, as discussed, *infra,* the facts of this case do not present this particular circumstance.

12. *See Temporary Importation Bonds; Anticipatory Breach, Assessment Amounts, Petitions for Relief,* 60 Fed.Reg. 14,630 (Dep't Treas.1995).

13. Commerce stated that it intends to conduct a notice and comment proceeding to determine what action, if any, should be taken to address the potential use of TIBs to evade AD/CV duty orders. Commerce plans to work with Customs to evaluate whether or how to exclude merchandise subject to AD/CV duty orders from TIB procedures.

14. TIMET cites various congressional amendments made in 1988 to prevent evasion of AD/CV duty laws. *See* 19 U.S.C. §§ 1677(19)(F), 1677h, 1677j (1988).

The court finds that Commerce and Customs' treatment of TIB entries as *not* entered for consumption, for purposes of AD/CV duty laws,[15] is reasonable and not contrary to the legislative intent of the statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984) ("[A] court may not substitute its own construction of a statutory provison [sic] for a reasonable interpretation made by ... an agency."); *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978) (" 'To sustain [an agency's] application of [a] statutory term, [a court] need not find that its construction is the only reasonable one, or even that it is the result [the court] would have reached had the question arisen in the first instance in judicial proceedings.' ") (quoting *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). Commerce's determination is sustained.

## JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

**IT IS HEREBY ORDERED:** that the remand determination of the International Trade Administration is sustained.

**15.** *See, e.g.,* C.S.D. 93–21, 27 Cust.Bull. & Decs. 450 (Customs' decision holding that, "TIB entries of merchandise subject to countervailing or antidumping duty are not consumption entries"); Cust. HQ Rul. 223899, at 2 (Sept. 2, 1992) (indicating that countervailing duties are normally charged against TIB and do not have to be deposited at time of entry as "TIB entries are not considered consumption entries for TIB purposes"); Cust. HQ Rul. 224661, at 3 (Jan. 11, 1994) (same).